[Cite as *State v. Gore*, 2016-Ohio-7667.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

       Plaintiff-Appellee,              :            No. 15AP-686
                                            (C.P.C. No. 14CR-2828)

v.                                               :

Anthony K. Gore,                                 :            (REGULAR CALENDAR)

       Defendant-Appellant.             :

---

D E C I S I O N

Rendered on November 8, 2016

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Valerie B. Swanson*, for appellee.

**On brief:** *Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Anthony K. Gore, defendant-appellant, appeals the judgment of the Franklin County Court of Common Pleas, in which the court found him guilty of voluntary manslaughter with specification, a violation of R.C. 2903.03 and a first-degree felony.

{¶ 2} At the plea hearing, counsel for the State of Ohio, plaintiff-appellee, entered the following facts into the record:

> Thank you, Your Honor. This incident happened back on May 5, 2015, * * * Pannell Avenue in Franklin County, State of Ohio. The facts that gave rise to the incident actually began the day before when the victim, Mr. Roderick Davis and his girl friend [Danielle Johns] had an argument. The argument sort of continued into the next day, when the victim and his

girl friend went to a doctor appointment for their children, at which point he leaves the appointment, goes back to the house on Pannell Avenue.

The defendant was staying there at that time with a couple other witnesses to this matter. He pulls up to the house quickly on the curb. There was an argument between an individual that came with the victim, as well as the defendant and some other people at the house. The argument moves into the back of the house, at which point there is a physical altercation between a witness by the name of Eric Robinson, as well as the defendant, I am sorry, Your Honor, the victim -- scratch that, the victim and Mr. Robinson are similar size. Mr. Robinson by all accounts does not witness the physical altercation.

From there, there is further fighting. At that point the victim kind of pushes the defendant. The defendant sort of pushes back and then shoots the victim two times, one time in the thigh, one time in the head.

After this, some people leave the scene. Investigators were called. The above witnesses were interviewed. After a time, the defendant does turn himself in on this matter.

(Apr. 27, 2105 Tr. at 12-13.)

{¶ 3} Appellant's counsel then recited the following additions and exceptions:

In our view, this was a case involving a substantial provocation on behalf of Mr. Davis.

As indicated earlier, he was at a doctor's office regarding his children. He was very irate and argumentative with the mother of his children. Several phone calls were made from that location by way of a cell phone to my client, and ultimately Mr. Robinson, and for reasons that still has not been made clear, it was clear that when Mr. Davis left the doctor's office, [he] told his girl friend that he was heading to work.

He did otherwise. He then drove back and stopped at a friend's house -- I can't remember the gentleman's name -- picked him up. That individual was very concerned about what was about ready to take place. Mr. Davis said to him, we have got work to do, work meaning fight.

They pull up to this residence, to this location, driving up on the curb, squealing tires, high rate of speed. Prior to that arrival, Mr. Davis had indicated, as was indicated, had been in an ongoing confrontation, verbal confrontation between he and his girl friend, extremely violent history with, threats by Mr. Davis to shoot up her and everybody else within that house.

In that house is my client's girl friend and his children. My client's girl friend and his children, which is * * * why my client was there. He was concerned about the nature of the threats made. A physical altercation takes [place] between Mr. Davis and Mr. Robinson. Mr. Robinson was choked to the point he believes he is going to die or pass out.

After that physical confrontation, he then turns his attention to Mr. Gore. Mr. Gore -- there is a substantial size difference both in terms of height, weight, and physicality. Mr. Gore made several attempts to try to back away to avoid confrontation.

Mr. Davis struck my client a number of times. There is some dispute as to how he was struck. My client pulled out the weapon, displayed it to him, look, back away, I don't want trouble, and Mr. Davis continued to aggressively approach my client, and it was within that climate that my client ultimately then fired the shot initially in the leg, hoping that would bring the situation to an end. After having been shot, Mr. Davis got up, again went after Mr. Gore, and during this entire sequence makes it very clear he doesn't care that he has a firearm.

There was a black bag that Mr. Davis came to that scene with. It is our belief that that black bag had a firearm, which would be consistent with Mr. Davis's behavior, and Mr. Gore saw Mr. Davis reach in that black bag, which also raised his level of fear and concern.

As I said before, this was an extremely close call, and this is why an Alford plea is being entered. In other words, in regard at the time of sentencing, I did want to add that for purposes of the record for today's proceeding.

(Apr. 27, 2015 Tr. at 14-16.)

{¶ 4} Appellant was indicted on one count of murder, in violation of R.C. 2903.02(A), and one count of murder, in violation of R.C. 2903.02(B). Both of the murder counts included three-year firearm specifications. He was also indicted on one count of kidnapping in regard to Justin Willis, which also included a three-year firearm specification.

{¶ 5} On April 27, 2015, appellant entered a guilty plea, pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), to voluntary manslaughter with a firearm specification, and the state dismissed the kidnapping count and murder count. At the plea hearing, the trial court stated: "The record will reflect that [the] court finds that there is sufficient evidence presented by the state through the presentation of facts to sustain a conviction of the offense to voluntary manslaughter." (Apr. 27, 2015 Tr. at 18.)

{¶ 6} On June 18, 2015, a sentencing hearing was held, at which the court reiterated: "Based on the facts as entered into the record by Mr. Simms on April 27, the court found that there was sufficient evidence to find Mr. Gore, Jr., guilty of the charge to which he entered an Alford plea." (June 18, 2015 Tr. at 21.)

{¶ 7} On June 19, 2015, the trial court issued a judgment entry in which the court sentenced appellant to terms of imprisonment of eight years on the voluntary manslaughter count and three years on the firearm specification, to be served consecutively. The court also ordered that appellant, either personally or through others, must stay away from and have no contact with the victim's family. Appellant appeals the judgment, asserting the following assignments of error:

> [I.] The sentence imposed below violated Appellant's right to due process of law under the Fifth and Fourteenth Amendments of the United States Constitution, Article I, Sections 1 and 16 of the Ohio Constitution, and was contrary to law in violation of R.C. 2953.08(A)(4) and R.C. 2953.08(G)(2)(b).
>
> [II.] The trial court erred when it ordered as a condition of the sentence that Appellant by himself or through his family stay away from and have no contact with the victim's family in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sections 1 and 16 of the Ohio Constitution, and R.C. 2929.13, 2929.14, and 2929.15.

{¶ 8} Appellant argues in his first assignment of error that the sentence imposed below violated his right to due process of law and was contrary to law. "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Under Ohio law, "[a] sentence is not clearly and convincingly contrary to law where [the] trial court 'considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range.' " *State v. Julious*, 12th Dist. No. CA2015-12-224, 2016-Ohio-4822, ¶ 8, quoting *State v. Ahlers*, 12th Dist. No. CA2015-06-100, 2016-Ohio-2890, ¶ 8.

{¶ 9} The voluntary manslaughter statute, R.C. 2903.03(A), provides that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another." Voluntary manslaughter is an inferior degree of murder because " ' "its elements are * * * contained within the indicted offense, except for one or more additional mitigating elements." ' " *State v. Shane*, 63 Ohio St.3d 630, 632 (1992), quoting *State v. Tyler*, 50 Ohio St.3d 24, 36 (1990), *superseded on other grounds*, quoting *State v. Deem*, 40 Ohio St.3d 205, 209 (1988). "Our criminal law recognizes that the provoked defendant is less worthy of blame than the unprovoked defendant, but the law is unwilling to allow the provoked defendant to totally escape punishment," as opposed to a killing in self-defense. *Id.* at 635. *State v. Lindsey*, 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 54

{¶ 10} Here, appellant contends the trial court failed to properly apply the statutory seriousness and recidivism factors contained in R.C. 2929.12 while applying appellant's sentence. Appellant points out that, at both the plea and sentencing hearings, the trial court acknowledged the record contained sufficient evidence through the presentation of facts by the state to sustain a conviction for voluntary manslaughter and the three-year firearm specification. Despite such findings, contends appellant, as the sentencing hearing progressed, the trial court rejected the provocation element of voluntary manslaughter by finding the victim lacked any responsibility in provoking

appellant. Appellant points out that the trial court's findings under the R.C. 2929.12 factors strongly implied that the shooting was less the result of sudden passion or sudden fit of rage generated by the victim's actions but, instead, was an indication of purposeful choice on appellant's part. Although appellant concedes a trial court can sentence a defendant according to the "real facts" of the case instead of the elements of a reduced offense arrived via plea bargain, here, appellant asserts the trial court specifically found at the time of the plea that the "real facts" supported appellant's conviction for voluntary manslaughter and its provocation element.

{¶ 11} We disagree with appellant. As stated above, this court's standard of review in determining if a trial court's sentence is clearly and convincingly contrary to law is whether the court considered the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, and sentenced the defendant within the permissible statutory range. *Julious* at ¶ 8. Here, the trial court clearly considered the principles and purposes of R.C. 2929.11 and engaged in a thoughtful and thorough analysis of the R.C. 2929.12 factors during the sentencing hearing. There is also no dispute that the court sentenced appellant within the permissible statutory range. Thus, the trial court's sentence was not clearly and convincingly contrary to law.

{¶ 12} Appellant's main contention that the trial court was required to find provocation because the court was constrained by its express finding that there was sufficient evidence to support the plea of voluntary manslaughter is without merit. Where a defendant has pled guilty to a lesser crime than originally charged as part of a plea bargain, "the trial court is permitted to consider the original charge when sentencing." *State v. Dari*, 8th Dist. No. 99367, 2013-Ohio-4189, ¶ 15. Thus, the sentencing court is free to consider the underlying facts when considering what sentence would be appropriate where the defendant has entered a plea to a lesser charge. *Id.* at ¶ 17; *see also State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, ¶ 17 (2d Dist.) (court may consider underlying facts in imposing sentence where defendant pleaded guilty to unindicted charge as part of plea bargain), citing *State v. Mayor*, 7th Dist. No. 07 MA 177, 2008-Ohio-7011, ¶ 17 (sentencing court may consider the circumstances of the offense for which the defendant was indicted, even if he negotiated a plea at odds with the indicted elements). " '[N]o caselaw * * * would prohibit a trial judge from taking into account

charges that are reduced or dismissed as a result of a plea bargain, [and] in fact, the history of Ohio law indicates that the sentencing judge may consider such factors.' " *State v. Watson*, 7th Dist. No. 09 MA 62, 2011-Ohio-1178, ¶ 15, quoting *State v. Starkey*, 7th Dist. No. 06 MA 110, 2007-Ohio-6702, ¶ 19.

{¶ 13} Furthermore, pursuant to the concept of "real offense" sentencing:

> [J]udges have been accustomed to sentence an offender based on the judge's perception of the true facts even though such facts may be inconsistent with a plea bargain. For example, a robbery charge may be plea bargained to an attempted robbery. A charge of grand theft of a motor vehicle may be plea bargained to attempted grand theft of a motor vehicle. Notwithstanding the plea bargain the judge may sentence the offender within the statutory parameters of the plea bargained offense based upon what the record shows to have been the real facts of the offense. Thus, seriousness of the offense will generally be based upon the judge's perception of the real facts of what occurred, and the plea bargained offense will simply set a ceiling on what the judge can impose.

*State v. Frankos*, 8th Dist. No. 78072 (Aug. 23, 2001), citing Griffin & Katz, Ohio Felony Sentencing Law (2000 Ed.) 450-51. Accordingly, in the present case, the trial court could consider the "real facts" as the trial judge perceived them, despite the original murder charge being plea bargained to voluntary manslaughter.

{¶ 14} Appellant's contention that the "real facts" included provocation because the trial court found sufficient evidence of the charge of voluntary manslaughter is without merit. Appellant's underlying premise is that provocation is an element of voluntary manslaughter; thus, a finding of sufficient evidence of voluntary manslaughter also includes a finding of sufficient evidence for provocation. However, courts have held that serious provocation, as contemplated in R.C. 2903.03, is not an element of the crime of voluntary manslaughter, but is rather a circumstance, the establishment of which mitigates a defendant's criminal culpability. *See, e.g., State v. Wallace*, 1st Dist. No. C-950465 (Dec. 31, 1996), citing *Shane* at 638; *State v. Heaston*, 9th Dist. No. 15138 (Jan. 29, 1992) (finding "[p]rovocation is not an element of the crime of voluntary manslaughter"). In *State v. Rhodes*, 63 Ohio St.3d 613, 618 (1992), the Supreme Court of Ohio found that if a defendant:

> [I]s on trial for voluntary manslaughter, neither party is required to establish either of the mitigating circumstances. Rather, the court presumes (to the benefit of the defendant) the existence of one or both of the mitigating circumstances as a result of the prosecutor's decision to try the defendant on the charge of voluntary manslaughter rather than murder. In that situation, the prosecution needs to prove, beyond a reasonable doubt, only that the defendant knowingly caused the death of another, and it is not a defense to voluntary manslaughter that neither party is able to demonstrate the existence of a mitigating circumstance.

{¶ 15} Applying *Rhodes* to the case before us, because the state was not required to prove provocation as an element of voluntary manslaughter, the trial court's finding that there was sufficient evidence to find appellant guilty of voluntary manslaughter did not implicitly include a finding that there was sufficient evidence to support provocation, and the trial court was free to find the victim did not provoke appellant in analyzing the sentencing factors.

{¶ 16} Based on the same analysis as above, we also reject appellant's arguments that the trial court misapplied R.C. 2929.12(C)(1) (that the "victim induced or facilitated the offense") and R.C. 2929.12(C)(2) ("[i]n committing the offense, the offender acted under strong provocation") when it found that the victim did not induce the offense and appellant did not act under strong provocation. The trial court was free to make the findings it did and was not constrained by its prior finding that there was sufficient evidence to sustain a conviction for voluntary manslaughter.

{¶ 17} Based on the same argument as above, appellant also argues that the trial court's finding under R.C. 2929.12(E)(4)—that appellant was likely to engage in such conduct in the future—was highly questionable because the trial court had already found that he was provoked when it found that there was sufficient evidence to demonstrate voluntary manslaughter. However, as we have found that the trial court did not implicitly make a finding of provocation by finding sufficient evidence of voluntary manslaughter, this argument is also without merit.

{¶ 18} Appellant also argues that the trial court erred by taking "under strong advisement" the factor found in R.C. 2929.12(B)(9), which provides that an offense is more serious if it involves a family or household member and the offender committed the

offense in the vicinity of children of the offender or victim. (June 18, 2015 Tr. at 53.) The trial court explained it was taking this factor under strong advisement because appellant's children were in the basement at the time of the offense and heard the gunshots. Appellant argues that R.C. 2929.12(B)(9) is only applicable when the defendant has been convicted of one of the listed predicate offenses, which are domestic violence, assault, aggravated assault, and felonious assault. However, R.C. 2929.12(A) provides that, in addition to the factors listed in (B), (C), (D), and (E), the court "may consider any other factors that are relevant to achieving those purposes and principles of sentencing," and R.C. 2929.12(B) provides that the sentencing court may consider "any other relevant factors, as indicating the offender's conduct is more serious than conduct normally constituting the offense." Thus, the trial court could take this factor under advisement.

{¶ 19} For all of the foregoing reasons, appellant's first assignment of error is overruled.

{¶ 20} Appellant argues in his second assignment of error that the trial court erred when it ordered as a condition of the sentence that appellant by himself or through his family stay away from and have no contact with the victim's family, citing *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089. In *Anderson*, the court held that "[a] trial court cannot impose a prison term and a no-contact order for the same felony offense." *Id.* at ¶ 1. The state concedes error. Therefore, we sustain appellant's second assignment of error.

{¶ 21} Accordingly, appellant's first assignment of error is overruled, appellant's second assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings in accordance with the law, consistent with this decision.

*Judgment affirmed in part and reversed in part;*
*cause remanded.*

TYACK and KLATT, JJ., concur.

_____