[Cite as *State v. Barber*, 2017-Ohio-7904.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 17AP-59 |
| v. | : | (C.P.C. No. 15CR-2988) |
| Edward J. Barber, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on September 28, 2017

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Valerie Swanson*, for appellee.

**On brief:** *Clark Law Office*, and *Toki Michelle Clark*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Edward J. Barber, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm that judgment.

## I. Factual and Procedural Background

{¶ 2} Appellant and Yvette Faison dated each other from 2006 until 2015. During that time, they had two children together (Faison already had two other children) and by fall 2014, they all lived in a house on Sidney Street in Columbus, Ohio. By the end of 2014, however, appellant moved out of the house. He was still welcome at the house and

he and Faison still were friendly with each other. Appellant helped out with the children and was a "parent figure" for Faison's other two children. By March 2015, that situation changed. Faison became tired of arguments she and appellant would get into whenever he came to the house and the way that he talked to her, so she stopped allowing appellant to come to the house. The two would occasionally talk on the phone.

{¶ 3} In April 2015, however, Faison received a voicemail from appellant. In the voicemail, appellant stated that he wanted to see his children and threatened her if she refused. Specifically, he said that "if I don't talk to my kids, I swear to God, I am gonna kill you and that bitch ass nigga."[1] (Tr. at 74.) He also stated that if she did not let him see his children, "I am going to come to your house. I am gonna act a fool. I don't give a fuck about going to jail. Girl, I swear to God, I am going to – I will kill you. Quit playing with me and my kids. I will kill you." *Id.* Appellant's message scared Faison. After the voicemail, Faison called appellant to tell him that she was done with him and that she did not want him calling her anymore. She also told him that she was going to get a protective order because of the threats in the voicemail.

{¶ 4} Faison and appellant had no contact with each other until two months later, when in the early morning hours of June 10, 2015, Faison was awoken by pounding at the door. The noise also woke her oldest child, K.F. Faison went downstairs to the front door and yelled at whoever was pounding at the door. Appellant told her he wanted to see his children. *Id.* at 83. Faison told appellant that it was late and that he should leave. Appellant continued to bang on the door and accused Faison of not wanting to let him inside because she had a man in the house. Appellant stopped banging on the front door and then started to bang on the front room window. At this point, Faision ran upstairs to get her phone to call the police. She came back and the two yelled at each other until the front room window shattered. Faison saw appellant walk through the window and tell her "[f]uck it, I am going to jail for murder tonight." *Id.* at 86. Faison immediately left the house and ran to her sister's house across the street. Appellant followed her. Faison was able to get into her sister's house and call 911. Appellant remained in the area and was arrested by the police, who arrived shortly after the 911 call. Appellant told the police officers that he needed to see his children and was angry that he could not. *Id.* at 36-37.

---

[1] From the context of the voicemail, it is clear that appellant thought that Faison was dating another man.

One of the officers that arrested appellant noted that he was bleeding from a cut on his hand. *Id.* at 27.

{¶ 5}    As a result of these events, a Franklin County Grand Jury indicted appellant with one count of aggravated burglary in violation of R.C. 2911.11.  Appellant entered a not guilty plea and proceeded to a jury trial.  At that trial, Faison and K.F. largely testified to the above version of events.  The jury found appellant guilty of the lesser-included offense of attempted aggravated burglary and the trial court sentenced him accordingly.

## II. The Appeal

{¶ 6}    Appellant appeals and assigns the following errors:

> [1.] The verdict of guilty is not supported by legally sufficient evidence and is against the manifest weight of evidence.
>
> [2.] Due Process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article One of the Ohio Constitution, is violated when a sentence is vindictive.

### A. First Assignment of Error—The Sufficiency and Manifest Weight of the Evidence

{¶ 7}    Appellant contends that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.  We disagree.

{¶ 8}    Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally adequate to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Whether the evidence is legally sufficient to support a verdict is a question of law. *Id.*  In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  A verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶ 9} In this inquiry, appellate courts do not assess whether the state's evidence is to be believed, but whether, if believed, the evidence admitted at trial supports the conviction. *State v. Yarbourgh*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime.").

{¶ 10} Appellant also contends that his convictions were against the manifest weight of the evidence. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *Thompkins* at 387. Although there may be sufficient evidence to support a judgment, a court may nevertheless conclude that a judgment is against the manifest weight of the evidence. *Id.*; *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 76.

{¶ 11} When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *State v. Strider-Williams*, 10th Dist. No. 10AP-334, 2010-Ohio-6179, ¶ 12.

{¶ 12} In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, we afford great

deference to the jury's determination of witness credibility. *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55. *See also State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus (credibility determinations are primarily for the trier of fact).

### 1. Appellant's Conviction

{¶ 13} Appellant was convicted of attempted aggravated burglary. Aggravated burglary, in violation of R.C. 2911.11(A)(1), prohibits any person, by force, stealth or deception, from trespassing in an occupied structure when another person other than an accomplice of the offender is present, with purpose to commit in the structure any criminal offense, if that person inflicts, or attempts or threatens to inflict physical harm on another. R.C. 2923.02(A) defines criminal attempt to prohibit a "person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." The Supreme Court of Ohio has elaborated on the statutory definition: "A 'criminal attempt' is when one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." *Group*, at ¶ 95, quoting *State v. Woods*, 48 Ohio St.2d 127 (1976), paragraph one of the syllabus; *State v. Hunt*, 10th Dist. No. 10AP-618, 2011-Ohio-4054, ¶ 16.

### 2. Appellant's Arguments

{¶ 14} Appellant argues that there was no evidence that he entered the house. We disagree. Both Faison and her daughter testified that appellant came into the house through the window. (Tr. at 54, 86.)

{¶ 15} Appellant also argues that even if he did enter the house, he was privileged to do so to visit his children. Again, we disagree.

{¶ 16} A "privilege" in this regard includes permission to enter the premises given by a resident of the premises. *Columbus v. Parks*, 10th Dist. No. 10AP-574, 2011-Ohio-2164, ¶ 14; *In re Meachem*, 10th Dist. No. 01AP-1122, 2002-Ohio-2243, ¶ 16. Appellant argues that Faison had given him permission to come in the house to visit with the children. While appellant had been allowed to enter the house in the past, Faison testified that since March or April before this incident, she had refused to allow him to see the

children and had ended contact with him completely after receiving his threatening voicemail. She specifically testified that she did not give appellant permission to come into her house that morning. (Tr. at 79, 104.) There is no evidence that appellant was privileged to enter Faison's house that morning.

{¶ 17} Last, appellant argues that his purpose for coming to the house was not to commit a criminal offense but to see his children. This was what he contends he told Faison when he was banging on the front door and was the explanation appellant provided to the police officers when they arrested him. Alternatively, the jury also heard Faison's testimony, which indicated that he was there to harm her. A conviction is not against the manifest weight of the evidence simply because the jury chose to believe the state's witnesses over the appellant's version of events. *State v. Lipkins*, 10th Dist. No. 16AP-616, 2017-Ohio-4085, ¶ 39. Moreover, the jury also heard facts which contradict appellant's version of events. These events occurred at 2:30 in the morning, a time when most children would be asleep. Additionally, when Faison ran out of her house, appellant did not stay in the house with the children but, instead, followed her to her sister's house. Faison also testified that when appellant was inside the house, he told her that he was going to jail for murder tonight. (Tr. at 86.) The jury also heard appellant's voicemail to Faison in which he threatened to come to her house and kill her. The jury did not lose its way by rejecting appellant's version of events and believing the state's version of events.

### 3. Conclusion

{¶ 18} Having rejected appellant's arguments, we conclude that appellant's conviction for attempted aggravated burglary is supported by sufficient evidence and is also not against the manifest weight of the evidence. Accordingly, we overrule his first assignment of error.

### B. Second Assignment of Error—The Trial Court's Sentence

{¶ 19} In his second assignment of error, appellant contends that the trial court wrongfully determined that his offense was motivated by prejudice against women and sentenced him to a longer prison term because of that finding. He argues this was improper because it was vindictive and because the finding is not supported by the evidence. We disagree.

{¶ 20} At his sentencing, the prosecutor noted that appellant faced a previous domestic violence charge against Faison in 2008 and that after the conduct that led to the present charge, he allegedly violated a protection order that Faison had against him.[2] The prosecutor also noted, in arguing for a lengthy prison sentence, his history of violence and his disrespect for women. The trial court agreed that appellant has "demonstrated a consistent pattern of disrespect for women, for the mother of your children, for your children by your choices and your behavior." (Jan. 13, 2017 Sentencing Tr. at 10.) The trial court then considered the statutory factors in R.C. 2929.12 before imposing sentence. The trial court first considered the factors in R.C. 2929.12(B) and (C), which relate to the seriousness of the offender's conduct. One of those factors, R.C. 2929.12(B)(8), addresses whether the offender was motivated by prejudice based on, among other things, gender, in committing the offense. The trial court found that appellant's offense was motivated by prejudice based on gender. (Sentencing Tr. at 14.) After considering and weighing each of the R.C. 2929.12(B) and (C) factors, the trial court concluded that his conduct was more serious than conduct normally constituting the offense. *Id.*

### 1. Standard of Review

{¶ 21} In sentencing a felony offender, the trial court must consider the overriding purposes of sentencing, which are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government." R.C. 2929.11(A). This requires consideration of "the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A). Further, pursuant to R.C. 2929.12(A), the court must consider the factors set forth in R.C. 2929.12(B) and (C) relating to the seriousness of the offender's conduct, as well as the factors set forth in R.C. 2929.12(D) and (E) relating to the likelihood of recidivism, along with any other relevant factors. *State v. Anderson*, 10th Dist. No. 15AP-1082, 2016-Ohio-5946, ¶ 8; *State v. Phipps*, 13AP-640, 2014-Ohio-2905, ¶ 46. "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial

---

[2] Those allegations were dismissed after this conviction.

court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 1; *State v. Gore*, 10th Dist. No. 15AP-686, 2016-Ohio-7667, ¶ 8.

### 2. Analysis

{¶ 22} First, we summarily reject appellant's claim that the trial court acted vindictively. R.C. 2929.12(B)(8) allows for a trial court to consider an offender's motivation and/or prejudice in committing an offense. Thus, the trial court could take into account appellant's prejudice against women in sentencing him.[3]

{¶ 23} In reality, appellant's argument is that the record does not support the trial court's conclusion that his acts were motivated by prejudice against women. We disagree. First, the trial court heard all the evidence at appellant's trial which demonstrated complete and utter disregard and disrespect for Faison. Additionally, the trial court was aware of other acts appellant committed against Faison. Further, the prosecutor commented on the manner in which appellant could not get along with his female attorneys and the female trial court judge. Therefore, the trial court's finding that appellant's conduct was motivated by prejudice against women is supported by the record. Accordingly, we overrule appellant's second assignment of error.

## III. Conclusion

{¶ 24} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and HORTON, JJ., concur.

_____

[3] Nevertheless, the trial court specifically told appellant at sentencing that regardless of how he felt about her, "that definitely is not going to impact my decision." (Sentencing Tr. at 11.)