**[Cite as *State v. Grieco*, 2020-Ohio-6956.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28542 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-889 |
| | : | |
| JESSICA L. GRIECO | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of December, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

BRYAN K. PENICK, Atty. Reg. No. 0071489 and KAITLYN C. MEEKS, Atty. Reg. No. 0098949, 40 North Main Street, Suite 1900, Dayton, Ohio 45423
        Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant Jessica L. Grieco appeals from her conviction for involuntary manslaughter. Grieco claims her plea of guilty was not voluntarily entered. She further contends the trial court erred in sentencing. Because the record fails to support Grieco's assertions, we affirm the judgment of the trial court.

## I.    Facts and Procedural History

{¶ 2} This case arises from the March 2017 shooting death of Grieco's fiancé, Peter Underwood. On that date, Montgomery County Sheriff's deputies responded to a home on Clagget Drive following a report of a shooting. When they arrived on the scene, the deputies observed Underwood lying on the floor on his back. They also observed Grieco "kneeling next to [him] with her hands on top of a towel on top of his chest." Suppression Tr. p. 14. The deputies observed a large hole in the middle of Underwood's chest. They began chest compressions until medics arrived and pronounced Underwood dead. A shotgun was observed and taken into evidence.

{¶ 3} In July 2017, Grieco was indicted on one count of domestic violence in violation of R.C. 2919.25(B), one count of involuntary manslaughter in violation of R.C. 2903.04(A), and one count of reckless homicide in violation of R.C. 2903.041(A). All three counts carried attendant firearm specifications. In August 2018, the trial court denied a motion by Grieco for new appointed counsel.

{¶ 4} Following a period of discovery, Grieco and the State entered into a plea agreement which provided that Grieco would enter pleas of guilty to the charges of domestic violence and involuntary manslaughter. In exchange, the State agreed to dismiss the reckless homicide charge and all of the firearm specifications. No agreement

was reached regarding sentencing. On October 22, 2018, Grieco entered a guilty plea. A sentencing hearing was conducted on November 29, 2018. The court merged the two offenses and imposed an eight-year prison sentence for involuntary manslaughter.

{¶ 5} Grieco appeals.

## II.      Grieco's Guilty Plea

{¶ 6} The first assignment of error states as follows:

APPELLANT'S PLEA OF GUILTY WAS NOT VOLUNTARY WHEN THE TRIAL COURT DENIED HER MOTION TO APPOINT NEW COUNSEL.

{¶ 7} Grieco asserts the trial court's denial of her motion for new counsel resulted in the entry of an involuntary plea of guilty.[1]

{¶ 8} An indigent defendant is entitled to competent, effective representation from an appointed attorney. *State v. Gordon*, 149 Ohio App.3d 237, 2002-Ohio-2761, 776 N.E.2d 1135, ¶ 11 (8th Dist.). However, when appointing counsel for an indigent defendant, a trial court does not have a duty to allow the defendant to choose her attorney. *Id.* Therefore, to justify the appointment of new counsel, a defendant is required to "demonstrate a breakdown in the attorney-client relationship of such magnitude as to jeopardize defendant's Sixth Amendment right to effective assistance of counsel." *State v. Coleman*, 2d Dist. Montgomery No. 19862, 2004-Ohio-1305, ¶ 24, citing *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988). "Disagreement between the attorney and client over trial tactics and strategy does not warrant a substitution of

---

[1] The record reveals Grieco was assigned counsel at the onset of this case. However, that attorney withdrew from the case in September 2017.

counsel. Moreover, mere hostility, tension, and personal conflicts between attorney and client do not constitute a total breakdown in communication if those problems do not interfere with the preparation and presentation of a defense." (Citations omitted.) *Id.* at ¶ 25.

{¶ 9} A hearing was conducted on August 15, 2018, during which Grieco expressed concern that counsel was biased against her and thus was not providing adequate representation. Specifically, she claimed that, as the case progressed, counsel "pushed" her to "take a deal," despite her stated desire to "fight" the charges. New Counsel Tr. p. 3. She informed the trial court that she felt counsel had a "predetermined bias[ ]" concerning how the case should be resolved. *Id.* at p. 4. In support of her claim, she faulted counsel for not filing a rebuttal memorandum following a motion to suppress hearing and for his failure to file a motion seeking all exculpatory evidence in the State's possession.

{¶ 10} The trial court noted that counsel was appointed on October 2, 2017 and that he obtained the full discovery packet within two days of his appointment. By the end of October, counsel had filed a motion regarding the grand jury proceedings and a motion seeking a handwriting expert. The court noted that it had held a hearing regarding the grand jury concerns and that counsel conducted a thorough examination of the grand jury witness during that hearing. Counsel also filed motions to suppress and for the appointment of a private investigator. The court further noted that counsel's motion to suppress was thoroughly briefed and that counsel conducted "exhaustive cross-examination of the witnesses" during the hearing. Tr. p. 12. Counsel additionally filed a post-hearing memorandum, which the trial court described as extremely detailed and

specific. Finally, the trial court found that, as is the custom in Montgomery County, the State had provided open discovery, which included all exculpatory material.

{¶ 11} On this record, Grieco has failed to demonstrate a significant breakdown in the attorney-client relationship. There was no allegation that counsel failed to meet with Grieco to discuss the case or that counsel failed to keep her apprised of the proceedings. Indeed, the record demonstrates, and the trial court found, that counsel's representation was exemplary. We cannot conclude that counsel's advice to accept a negotiated plea demonstrated counsel's bias or a lack of effective assistance. We find no basis to disagree with the trial court's assessment of counsel's performance or the status of the attorney-client relationship.

{¶ 12} In short, we find no abuse of discretion regarding to the trial court's denial of Grieco's motion for the appointment of new counsel, as the record does not demonstrate that her relationship with counsel had deteriorated to the point that she was denied the effective assistance of counsel.

{¶ 13} We next turn to Grieco's claim that the trial court's refusal to appoint new counsel resulted in an involuntary plea. In order to "satisfy the requirements of due process, a plea of guilty * * * must be knowing, intelligent, and voluntary, and the record must affirmatively demonstrate" as much. *State v. Chessman*, 2d Dist. Greene No. 03-CA-100, 2006-Ohio-835, ¶ 15, citing *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). To ensure that a defendant's plea is knowing, voluntary, and intelligent, the trial court must engage the defendant in a colloquy sufficient to satisfy the requirements of Crim.R. 11(C). *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25-26. Crim.R. 11(C)(2) provides the trial court may not accept a

guilty plea without first addressing the defendant personally and:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 14} Grieco does not challenge the trial court's adherence to the requirements of Crim.R. 11, except to argue the failure to appoint new counsel caused her to feel pressured to accept the plea agreement and thereby "perverted" the purpose of the rule. She argues that "[b]eing forced to proceed with an attorney she believed would not vigorously defend her at trial left [her] with no choice other than to plead guilty."

{¶ 15} The record demonstrates that, prior to accepting Grieco's plea, the trial court fully advised her in accordance with the requirements of Crim.R. 11. Grieco affirmatively stated she understood the nature of the charges as well as the possible penalties and the issues regarding merger of the offenses for sentencing. The trial court

properly informed her as to the presumption of prison and the findings required to overcome that presumption. The trial court informed Grieco that she would be subject to five years of post-release control and of the penalties for violation thereof, including the effect of committing a new felony. The trial court also appropriately informed Grieco of the constitutional rights she was waiving. The court then ensured that she was entering into the plea voluntarily and of her own free will. Quite importantly, Grieco affirmatively stated that defense counsel had not pressured her into entering the plea.

{¶ 16} We note that the plea occurred seven days prior to the scheduled trial date and more than two months after Grieco made the request for new counsel. At no time between the denial of her request and the entry of her plea did Grieco express continued dissatisfaction with counsel's representation. As noted, when entering her plea, Grieco affirmatively stated that she felt no pressure from counsel to accept the plea. Notably, she did not make any claim to the trial court indicating that she felt counsel would not adequately represent her at trial or that, as a result, she believed she had no choice but to enter the plea.[2] Her history with criminal proceedings, as outlined below, indicates she is familiar with the criminal justice system, including her rights thereunder and the types of actions defense counsel may take. The trial court conducted an exemplary Crim.R. 11 colloquy and the record affirms the voluntary and knowing nature of her plea.

---

[2] *Contrast State v. Gordon*, 149 Ohio App.3d 237, 2002-Ohio-2761, 776 N.E.2d 1135, ¶ 16 1st Dist.) (guilty plea overturned when, "despite the trial court's best effort to elicit a guilty plea untainted by Gordon's dissatisfaction with his attorney's efforts, Gordon told the court no less than five times that he was pleading guilty only because he believed that to be his only alternative.")

Therefore, we conclude the record simply does not support Grieco's claim that she entered the plea due to pressure from her attorney or because she felt she had no alternative.

{¶ 17} Because Grieco has failed to demonstrate any error by the trial court regarding the denial of new counsel or the taking of her plea, the first assignment of error is overruled.

### III. Grieco's Sentence

{¶ 18} The second assignment of error asserted by Grieco is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED

MS. GRIECO TO AN EIGHT-YEAR PRISON SENTENCE.

{¶ 19} Grieco asserts the trial court abused its discretion by imposing an excessive sentence.

{¶ 20} When reviewing felony sentences, "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2). Instead, a reviewing court may "increase, reduce, or otherwise modify a sentence only when it clearly and convincingly finds that the sentence is (1) contrary to law or (2) unsupported by the record." *State v. Brandenburg*, 146 Ohio St.3d 221, 2016-Ohio-2970, ¶ 1, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 7. "This is a very deferential standard of review, as the question is not whether the trial court had clear and convincing evidence to support its findings, but rather, whether we clearly and convincingly find that the record fails to support the trial court's findings." (Citations

omitted.) *State v. Cochran*, 2d Dist. Clark No. 2016-CA-33, 2017-Ohio-217, ¶ 7.[3] Additionally, although R.C. 2953.08(G) does not mention R.C. 2929.11 or 2929.12, the Supreme Court of Ohio has determined the same standard of review applies to findings made under those statutes, stating, "it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court," meaning that "an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence". *Marcum* at ¶ 23.

{¶ 21} A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Julious*, 12th Dist. Butler No. CA2015-12-224, 2016-Ohio-4822, ¶ 8; *State v. Haddad*, 10th Dist. Franklin No. 16AP-459, 2017-Ohio-1290, ¶ 19, citing *State v. Gore*, 10th Dist. Franklin No. 15AP-686, 2016-Ohio-7667, ¶ 8.

{¶ 22} We begin by noting that Grieco was convicted of a first-degree felony which carried a presumption of a prison sentence. R.C. 2929.13(D). The presumption may be rebutted if the trial court finds the imposition of community control sanctions (1) would adequately punish the offender and protect the public from future crime, and (2) would

---

[3] Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

not demean the seriousness of the offense. R.C. 2929.13(D)(2). The trial court stated that, based upon the record, it could not make the findings required to overcome the presumption of prison. Grieco contends, however, that the record sufficiently rebutted the presumption. Specifically, she contends that she showed remorse for what she deemed an accident and that her lack of a prior felony criminal record militated against a prison sentence. She thus asserts that the trial court should have imposed community control sanctions. In the alternative, she asserts that the court abused its discretion by imposing more than a minimum prison term.

{¶ 23} The record demonstrates the trial court considered the purposes and principles of sentencing set forth in R.C. 2929.11 as well as the factors set forth in R.C. 2929.12. Also, the court notified Grieco that she would be subject to five years of post-release control and of the consequences for violation of post-release control. The sentence imposed by the trial court also fell within the permissible statutory range of three to eleven years. Thus, we find no basis for concluding that the sentence imposed was contrary to law.

{¶ 24} Further, the record supported the sentence imposed by the trial court. Prior to imposing sentence, the court noted that it had considered the sentencing memorandum filed by Grieco, the information provided at the hearing, the presentence investigation report, the 911 call made by Grieco, a letter from Grieco, a letter in support of Grieco, a certificate of graduation from the Y.E.S. Program, a victim impact statement written by the victim's parents, and the separate written statements of the victim's family members.

{¶ 25} The court expressed concern over a 2004 misdemeanor domestic violence

conviction, stating that it found the underlying facts of that offense "particularly disturbing." Tr. p. 147. According to the record, Grieco threatened her "intimate partner" with a long gun and ultimately stabbed him three times, causing "significant harm." Sentencing Tr. p. 148. The offense was originally charged as felonious assault but, with the agreement of the victim, was reduced to a first-degree misdemeanor.

{¶ 26} The presentence investigation report also showed that Grieco was convicted of driving under the influence in 2001 and was sentenced to probation. In 2003, she was convicted of misdemeanor theft, originally charged as a felony, for which she received probation. She was sentenced to 180 days in jail for the 2004 domestic violence conviction, but the sentence was suspended and she was placed on probation. Grieco was convicted of reckless operation in 2005; that offense was originally charged as operating a vehicle under the influence. Grieco was sentenced to jail, but the sentence was suspended and she was placed on probation. In 2006 and 2010, Grieco was convicted of driving while intoxicated and received suspended jail sentences and probation in both cases. She was convicted of possession of marijuana in 2011, for which she was fined. Finally, in 2015, Grieco was convicted of misdemeanor drug abuse, misdemeanor obstructing official business and misdemeanor driving under the influence for which she was given another suspended jail sentence. It was clear from this criminal history that probation had not sufficiently prevented Grieco from committing additional offenses.

{¶ 27} As previously noted, Grieco insisted the shooting of Underwood was an accident. According to Grieco, Underwood had been depressed and suicidal. She claimed that, earlier on the day of the shooting, she had taken a rope from him after he

threatened to hang himself. She further claimed that she later attempted to remove a shotgun from the home in order to protect him.

{¶ 28} However, the record indicates that Grieco was not forthcoming regarding the circumstances of the offense, as she provided two different versions of the events. On the taped recording of her 911 call, she claimed that she accidentally discharged the gun while attempted to unload it. However, Grieco informed the responding deputies that she and Underwood had been struggling over a shotgun when the gun accidentally discharged. She later gave a videotaped interview in which she once again claimed that she had been trying to unload the shotgun when it accidentally fired.

{¶ 29} The physical evidence indicated that Underwood was not in close proximity with Grieco when the gun discharged. Further, an examination of the shotgun revealed that it had a malfunction which made it harder to fire than normal, belying the claim of an accidental discharge. Thus, the trial court was entitled to disregard Grieco's claim of accident, as the physical evidence indicated she was not engaged in a struggle with Underwood when the gun discharged and that the gun was damaged in a manner that made an accidental discharge unlikely. Additionally, Grieco's claim of remorse was belied by the fact that she gave two accounts of the event, neither of which correspond to the physical evidence.

{¶ 30} After a thorough review of the record, including the trial court's underlying findings in support of the sentence, we find no error in the trial court's decision to sentence Grieco to prison rather than to community control. The sentence was not contrary to law and was supported by the record. Thus, Grieco's assignment of error lacks merit.

{¶ 31} The second assignment of error is overruled.

## IV.     Conclusion

**{¶ 32}** Both of Grieco's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Bryan K. Penick
Kaitlyn C. Meeks
Hon. Mary E. Montgomery