[Cite as *State v. Grieco*, 2021-Ohio-735.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|                          |     |                          |
| ------------------------ | --- | ------------------------ |
| STATE OF OHIO            | :   |                          |
|                          | :   |                          |
| Plaintiff-Appellee       | :   | Appellate Case No. 28822 |
|                          | :   |                          |
| v.                       | :   | Trial Court Case No. 2017-CR-889 |
|                          | :   |                          |
| JESSICA L. GRIECO        | :   | (Criminal Appeal from    |
|                          | :   | Common Pleas Court)      |
| Defendant-Appellant      | :   |                          |
|                          | :   |                          |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of March, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

JESSICA L. GRIECO, #W102-426, 1479 Collins Avenue, Marysville, Ohio 43040
      Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Jessica L. Grieco appeals pro se from the trial court's judgment dismissing her petition for post-conviction relief without a hearing, sustaining the State's motion for summary judgment, overruling her demand for discovery, and sustaining the State's motion to strike. We hereby affirm the judgment of the trial court.

{¶ 2} This Court recently affirmed Grieco's conviction on direct appeal. *State v. Grieco*, 2d Dist. Montgomery No. 28542, 2020-Ohio-6956.[1] In that appeal, we set forth the facts and procedural history as follows:

This case arises from the March 2017 shooting death of Grieco's fiancé, Peter Underwood. On that date, Montgomery County Sheriff's deputies responded to a home on Clagget Drive following a report of a shooting. When they arrived on the scene, the deputies observed Underwood lying on the floor on his back. They also observed Grieco "kneeling next to [him] with her hands on top of a towel on top of his chest." Suppression Tr. p. 14. The deputies observed a large hole in the middle of Underwood's chest. They began chest compressions until medics arrived and pronounced Underwood dead. A shotgun was observed and taken into evidence.

In July 2017, Grieco was indicted on one count of domestic violence in violation of R.C. 2929.25(B), one count of involuntary manslaughter in violation of R.C. 2903.04(A), and one count of reckless homicide in violation of R.C. 2903.041(A). All three counts carried attendant firearm

---

[1] Grieco filed her petition for post-conviction relief in the trial court on October 11, 2019, and this Court granted her motion for a delayed appeal in the direct appeal on October 25, 2019.

specifications. In August 2018, the trial court denied a motion by Grieco for new appointed counsel.

Following a period of discovery, Grieco and the State entered into a plea agreement which provided that Grieco would enter pleas of guilty to the charges of domestic violence and involuntary manslaughter. In exchange, the State agreed to dismiss the reckless homicide charge and all of the firearm specifications. No agreement was reached regarding sentencing. On October 22, 2018, Grieco entered a guilty plea. A sentencing hearing was conducted on November 29, 2018. The court merged the two offenses and imposed an eight-year prison sentence for involuntary manslaughter.

*Id.* at ¶ 2-4.

{¶ 3} On October 11, 2019, Grieco filed her pro se petition for post-conviction relief.[2] The petition asserted that Deputy Brian Godsey of the Montgomery County Sheriff's Department had "tampered" with evidence and that defense counsel had been ineffective at trial.

{¶ 4} With respect to Deputy Godsey, Grieco argued that he tampered with evidence when he washed blood off of her hands on the night in question prior to obtaining her consent or a warrant. Grieco asserted that, as a result, this evidence was "never logged into any system, nor turned in, in any official capacity." Grieco argued that an evidence technician on the scene could have collected this evidence, rather than having

---

[2] The same day, Grieco also filed a pro se motion for appointment of counsel, to which an affidavit of indigency was attached, and a pro se motion for expert assistance.

it "destroy[ed]." On these bases, Grieco's petition claimed that Godsey had tampered with evidence in violation of R.C. 2921.12,[3] and that the evidence had been exculpatory and "paramount" to her case. In support of these claims, Grieco referred to: 1) a report from Godsey wherein he stated at a "medic gave her [Grieco] saline and a towel"; 2) Godsey's report, which stated that his usual practice was gather blood, projectile, physical, and other evidence, but "which show[ed] this gathering of evidence occurred after the Evidence Tampering"; and 3) the "Scene Log," which "show[ed] that the Medics left the scene at 6:45 pm, before the Evidence Tampering occurred." There were no attachments to Grieco's petition.

{¶ 5} Second, Grieco argued that her second defense counsel was ineffective in that he had an audio recording of Godsey's body microphone in his possession for many months, which allegedly "proved the Evidence Tampering by * * * Godsey," but defense counsel never told Grieco about this evidence. Grieco asserted that defense counsel was "made aware by court record" that evidence had been tampered with in her criminal case, through the trial court's decision on her motion to suppress and the "transcript" of

---

[3] R.C. 2921.12 states: "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation; (2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation. (B) Whoever violates this section is guilty of tampering with evidence, a felony of the third degree."

Godsey's "body microphone."[4]  Grieco asserted that, notwithstanding this evidence, defense counsel did not question Godsey about evidence tampering during the hearing on Grieco's motion to suppress, "never brought to the Court's attention that Deputy Godsey had broken the law" and lied in his report, and never reported that the State was using evidence obtained through tampering.  Based on these assertions, Grieco argued that defense counsel was "biased" and that she would have gone to trial rather than entering a plea but for counsel's "improper advice, prejudice, misinformation, and coercion."

{¶ 6} Grieco further asserted that defense counsel "failed" to find and question witnesses favorable to her defense; rather, counsel left these tasks to the investigator, who failed to make a good faith effort in this regard, and then counsel "refused to fire" the investigator.  Grieco also asserted that counsel permitted the investigator to "test the gun" and to act as an "expert" in her case.  In support of these assertions, Grieco again cited to the trial court's decision on the motion to suppress and Godsey's "body microphone transcript."

{¶ 7} Finally, Grieco asserted that Godsey withheld blood evidence from her hands, that the State withheld proof of Godsey's evidence tampering, that the State used other evidence Godsey had obtained in violation of Ohio law, and that it presented such evidence to the grand jury.  She also asserted that deputies "presented false information"

---

[4] The trial court's decision on the motion to suppress stated that "[s]tatements were made by Grieco to Deputy Godsey from 7:03 PM to 7:11 PM, as recorded on Godsey's Cruiser Cam Video, State's Exhibit 1," and the exchange was included in the court's decision.  In the course of the exchange, Godsey stated to Grieco, "I've got some saline and a towel for you, if you want," and "Let me get you some ah . . . some saline.  You can lean out here and get your hands washed off."  See Decision and Entry, June 7, 2018.

about where the victim, Underwood, was standing when he was shot, because the blood splatter pattern at the scene suggested that Underwood was much closer to her at the time of the shooting that the State claimed. Grieco asserted that the State did not reveal Deputy Godsey's evidence tampering in a timely manner.

{¶ 8} The State filed a response to Grieco's petition on October 16, 2019, and a motion for summary judgment on November 5, 2019. With respect to tampering with evidence, the State argued in its motion that Grieco used "portions of previously disclosed police reports and excerpts from a motion to suppress transcript to argue her position," but that all of these materials were available to her at the time of her direct appeal of her convictions. Thus, according to the State, her petition was subject to dismissal without a hearing because her claims were barred by res judicata.

{¶ 9} Regarding Grieco's claims of ineffective assistance of counsel, the State asserted that she failed to present any affidavits or other exhibits which supported her claims, and that there was no evidence to substantiate her claims that defense counsel failed to search for and/or question favorable witnesses or failed to properly work with the defense's investigator. Therefore, the State argued that Grieco's arguments were "merely speculative" and did not demonstrate how she was allegedly coerced into pleading guilty. The State asserted that, in light of the plea hearing held in this case and Grieco's signed plea forms, her petition should be dismissed for failing to substantiate her claims with "actual evidence." Finally, the State asserted that Grieco had failed to produce any evidence indicating that she would not have pled guilty and would have insisted on going to trial but for counsel's "alleged erroneous advice."

{¶ 10} On February 7, 2020, Grieco filed a demand for discovery in which she

sought any statements made by her or any investigating officer, written summaries of all of her oral statements, any documents material to her petition, and all evidence known to the State to be material to her claims. The State responded to Grieco's demand on April 7, 2020, asserting that as a non-capital defendant, she was not entitled to discovery in a post-conviction proceeding.

{¶ 11} On March 11, 2020, Grieco filed "supplemental evidence," namely three exhibits.[5]   Later that month, the State filed a motion to strike Grieco's supplemental evidence, because she had not requested leave to supplement to the original post-conviction relief petition, as required by R.C. 2953.21(G)(3).

{¶ 12} In April 2020, Grieco filed an "Accusation by Affidavit" against Deputy Godsey[6] and a response to the State's motion to strike.   In her response to the motion to strike, Grieco asserted that she was permitted to amend her petition pursuant to R.C. 2953.21 and Civ.R. 15, because the State had not filed an answer when her supplement was filed; she also argues that the evidence should be admitted "in the interest of correcting false evidence" and because it was relevant.

{¶ 13} The trial court filed its decision on the petition and other pending motions on May 18, 2020.   Prior to analyzing Grieco's petition and the State's motion for summary

---

[5] Exhibit A was select pages of Godsey's "body microphone transcripts from March 21st, 2017."   Exhibit B was a January 17, 2020, correspondence from defense counsel to Grieco which stated that counsel "never had transcripts of the audio" from her discovery, including her conversations with deputies. Exhibit C was a January 24, 2020 correspondence to Grieco from one of her attorneys that showed she "received a copy of the transcript from [Godsey's] body microphone near the Feb. 24th 2020 date on the letter."

[6] On May 18, 2020, the trial court referred the affidavit of accusation to the prosecutor "for investigation and prosecution as it deem[ed] fit."

judgment, the trial court noted that the petition had been timely filed and that the trial court was required to consider it pursuant to R.C. 2953.21(D), notwithstanding that Grieco's direct appeal was pending. The trial court also noted that Grieco had cited the following materials in the record: the record of the suppression hearing, including the exhibits; the record of the August 15, 2018 hearing on Grieco's request for new appointed counsel and the exhibit entered into evidence at that hearing; the record of Grieco's plea hearing on October 22, 2018; and the court's June 7, 2018 decision on Grieco's motion to suppress. Additionally, the trial court stated that it had considered all materials listed in R.C. 2953.21(D), as it was required to do.

{¶ 14} The court declined to consider the exhibits filed by Grieco as "supplemental evidence" and sustained the State's motion to strike those exhibits. It reasoned that, if the supplemental evidence were interpreted as an amendment to Grieco's petition, it was not properly filed because Grieco filed the supplemental evidence after the State had filed its answer, without obtaining leave of court. *See* R.C. 2951.23(G). On the other hand, if the supplemental evidence were interpreted as a response to the State's motion for summary judgment, the materials could not be considered by the court for that purpose because they were not summary judgment evidence pursuant to Civ.R. 56(C).

{¶ 15} In addressing Grieco's petition, the court noted that Grieco asserted four grounds for relief, namely: 1) a violation of her Fourth Amendment rights, 2) ineffective assistance of counsel, 3) the involuntariness of her guilty plea, and 4) violations of due process and equal protection. The court found that although Grieco brought her first claim under the Fourth Amendment's prohibition against unreasonable searches and seizures, this claim was properly analyzed under the Due Process Clause of the

Fourteenth Amendment.   The court concluded:

> Defendant has failed to show there are substantive grounds for relief that would warrant a hearing on [her] claim that Deputy Godsey destroyed or failed to preserve evidence.   Defendant contends that if the blood on her hands had been preserved, such evidence would have exculpated Defendant.   The Court disagrees.   Deputy Godsey testified at the Suppression Hearing that when he first encountered Defendant at the crime scene, Defendant was pressing down on a towel on top of Mr. Underwood's chest.   Deputy Godsey further testified that Defendant and Mr. Underwood were the only two persons that he found at the crime scene.   The Court finds that the blood on Defendant's hands, which presumably would have been Mr. Underwood's blood, would not have been materially exculpatory.

> The Court also finds that Deputy Godsey did not violate Defendant's due process rights by failing to preserve "potentially useful" evidence. * * * Although it is possible that the blood on Defendant's hands could have been subjected to tests, the blood was presumably that of Mr. Underwood – the victim.   As such, it strains credulity to say that the results of such tests "might have exonerated" Defendant.   However, assuming that the evidence was potentially useful, the Court finds that any failure to preserve such evidence did not violate Defendant's due process rights.   Defendant has provided no evidence that Deputy Godsey or any other agent of the State acted in bad faith in failing to preserve such evidence.

> Defendant has failed to show that any evidence Deputy Godsey

destroyed or failed to preserve was materially exculpatory. Defendant has also failed to submit any evidence that Deputy Godsey acted in bad faith in failing to preserve any such evidence.

**{¶ 16}** Regarding Grieco's ineffective assistance of counsel claim, the court found that part of the claim was barred by res judicata, which "applies to a claim raised by a defendant in a petition for post-conviction relief while the defendant's direct appeal is pending." The court found that Grieco's assertion that defense counsel was ineffective in failing to question Godsey at the suppression hearing about the alleged evidence tampering could have been made on direct appeal without resort to evidence outside record, and Grieco had not asserted that her appellate counsel had any conflict that prevented appellate counsel from raising a claim of ineffective assistance of counsel.

**{¶ 17}** Regarding Grieco's assertion that defense counsel was ineffective because he failed to locate and question witnesses favorable to her and failed to fire the investigator, the court determined that Grieco's concerns were also "matters of record," since the court had conducted a hearing in August 2018 on Grieco's request for new appointed counsel. Also, the court noted that the record did not reflect the identities of the witnesses Grieco claimed defense counsel and the investigator had failed to locate. As such, this second part of Defendant's claim is not barred by res judicata." However, because Grieco "failed to submit any evidence to show (1) that any such witnesses existed; (2) what such witnesses would have testified to; and (3) that Defendant told either [defense counsel or the investigator] about such witnesses; or (4) that [defense counsel or the investigator] failed to attempt to locate and question such witnesses," the court concluded that Grieco had failed to submit any evidence that defense counsel provided

ineffective assistance by failing to locate those witnesses or by failing to fire the investigator.

{¶ 18} Regarding Grieco's assertion that her plea had been involuntary due to ineffective assistance of counsel, the court concluded that whether her plea was entered knowingly, intelligently and voluntarily was properly addressed on direct appeal, since Grieco relied on matters of record in support of her claim.

{¶ 19} Finally, regarding Grieco's equal protection and due process arguments that Godsey withheld exculpatory evidence, that the State withheld information about Godsey's alleged evidence tampering, and that deputies presented false information regarding Underwood's location at the time of the shooting, the court determined that Grieco had failed to demonstrate an equal protection violation. The court noted that Grieco "has neither argued nor presented any evidence that she was treated differently than any other similarly situated defendant."

{¶ 20} With respect to due process, the court denied Grieco's claim that her due process rights were violated by Deputy Godsey's withholding of material evidence, for the reasons it had already discussed under Grieco's first ground for relief. The court further found that Grieco's claim that her due process rights were violated when "prosecutors withheld the fact that there was proof of Deputy Godsey's evidence tampering" was without merit, because there was no evidence that the State failed to disclose such evidence. Again, the court noted that it had already addressed her arguments that Godsey destroyed and failed to preserve evidence. As to the argument that Godsey lied about who provided saline and a towel to Grieco, the court found that she had failed to file a copy of Godsey's police report or any other evidence in support of this argument.

{¶ 21} To the extent there was any inconsistency between Deputy Godsey's report and his testimony at either the suppression hearing or the grand jury proceedings, the court found that it did not constitute a due process violation. The court noted that Grieco was "claiming not that Deputy Godsey lied under oath but rather that Deputy Godsey lied in his police report," and any inclusion of inaccurate information in Godsey's report could have been addressed during his cross-examination at trial. Further, the court found that Grieco's claim that prosecutor's improperly presented evidence collected by Godsey to the grand jury also could have been raised at trial. As such, the court concluded that those claims were barred by res judicata.

{¶ 22} The court found that Grieco had presented no evidence to support her claim that deputies falsely represented the distance between her and the victim, Underwood, when Grieco shot Underwood.

{¶ 23} Finally, the court concluded that Grieco was not entitled to discovery as a non-capital defendant.

{¶ 24} We note that on August 26, 2020, while this appeal was pending, Grieco filed a pro se motion for judicial notice in this Court, asking us to take judicial notice that the Montgomery County Clerk of Court had time-stamped her petition for post-conviction on October 11, 2019. Her petition was attached to her motion, along with an affidavit of indigency, a copy of her motion for appointment of counsel, a copy of her motion for expert assistance, and other materials. The State filed a motion to strike Grieco's motion for judicial notice, and Grieco filed a reply.

{¶ 25} On September 15, 2020, we overruled Grieco's motion for judicial notice as unnecessary and also overruled the State's motion to strike. We noted that, on

September 9, 2020, additional filings from the underlying case were transferred into this appeal, and these included Grieco's October 11, 2019 post-conviction petition, as well as her motions for appointment of counsel and for expert assistance, also filed October 11, 2019. We noted that these filings were part of the record of the underlying case and were not new materials, and therefore were not subject to being stricken from the record.

{¶ 26} On November 30, 2020, the State filed a motion to supplement the record "to include the summary of docket and record absent from the current record on appeal [which] were filed as part of an appeal that is still pending. In particular, the prior appeal that was filed, CA 28542, included several motions at issue in the present appeal." On December 9, 2020, this Court sustained the State's motion.

{¶ 27} Grieco raises eight assignments of error in her pro se brief. For ease of analysis, we will consider her assigned errors out of order. We begin with her eighth assignment of error, which states:

> THE TRIAL COURT ABUSED ITS DISCRETION, IN GRANTING THE STATE'S MOTION TO STRIKE THE APPELLANT'S SUPPLEMENTAL EVIDENCE BRIEF.

{¶ 28} Grieco asserts that the trial court abused its discretion when it struck her supplemental evidence, because she had only received the evidence in January 2019, after she had filed her petition. She also claims that she was not aware that she needed leave of court or she would have requested it. Grieco argues that the stricken evidence was "crucial to show that [defense counsel] was not only ineffective, but [that] his actions contributed to [her] involuntary plea."

{¶ 29} The trial court properly granted the State's motion to strike Grieco's

supplemental evidence. As noted above, Grieco filed her petition on October 11, 2019, and the State filed its answer on October 16, 2019, prior to her motion to supplement the record. *See* R.C. 2951.23(G). "[I]n Ohio, pro se litigants are 'presumed to know the law and correct procedure, and are held to the same standard as other litigants.' *Yocum v. Means*, 2d Dist. Darke No. 1576, 2002-Ohio-3803, ¶ 20. Thus, 'a pro se litigant "cannot expect or demand special treatment from the judge, who is to sit as impartial arbiter." * * *.' *Id.*" *Smith v. Gilbert,* 2d Dist. Clark No. 2016-CA-52, 2017-Ohio-7634, ¶ 27. It was incumbent on Grieco to seek leave of court, even as a pro se litigant, and she failed to do so. Her eighth assignment of error is accordingly overruled.

{¶ 30} We will next consider Grieco's first, fourth, fifth, and sixth assignments of error together, as they are closely related. They state:

THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GRANT APPELLANT AN EVIDENTIARY HEARING PURSUANT TO R.C. 2953.21(C).

THE TRIAL COURT USED AN ABUSE OF DISCRETION WHEN IT SHOWED BIAS IN FAVOR THE STATE, TO THE PREJUDICE OF APPELLANT FOR FAILING TO CONSIDER EXCUPLATORY EVIDENCE (MONTGOMERY COUNTY SHERIFF'S DEPARTMENT REPORT #17-2437 (INVESTIGATIVE 0001), SUBMITTED BY BRIAN GODSEY), WHICH WAS FALSIFIED, WHEN DETERMINGING THE POST CONVICTION PROCEEDING.

THE TRIAL COURT USED AN ABUSE OF DISCRETION IN FAVOR OF THE STATE TO THE PREJUDICE OF THE APPELLANT FOR THE

DETERMINATION OF LAW REGARDING APPELLANT'S BRADY CLAIM.

THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT FAILED TO CONSIDER FRAUD AND MISCONDUCT OF THE PROSECUTOR.

{¶ 31} These assignments of error involve Deputy Godsey's report, the recording of his exchange with Grieco at the scene, the blood on Grieco's hands, and the towel used to clean her hands. In her first assignment of error, Grieco asserts that she had submitted evidence to show that her constitutional rights had been violated, that Godsey had tampered with evidence in her case and had falsified his police report to cover it up, and that the prosecutors had proof of tampering based on the audio from Godsey's body microphone and withheld it. Grieco asserts that the State relied upon the "falsified police report" for the purpose of obtaining an indictment against her.

{¶ 32} In her fourth assignment of error, Grieco asserts that the trial court abused its discretion and violated her right to due process when it determined that she "had not submitted the falsified police report" with her petition for post-conviction relief and that no hearing was warranted.

{¶ 33} In her fifth assignment of error, Grieco argues that the "towel that Deputy Godsey did not turn in as evidence would have contained Gun Shot Residue evidence (or rather lack thereof), which could have exonerated" her in the shooting of her fiancé, Underwood. Grieco contends that, according to the Miami Valley Regional Crime Lab report, her "Touch DNA" was "excluded" from the trigger and trigger guard of the gun, and Underwood's "could not be excluded," and therefore Godsey acted in bad faith by "falsify[ing] his police report to cover up the fact that he did not turn in that critical evidence

[the towel]."

{¶ 34} In her sixth assignment of error, Grieco asserts that the prosecutors submitted a falsified police report to the grand jury to secure her indictment, and did so knowingly, as the audio from Godsey's body microphone proved that he had washed Grieco's hands off (or allowed her to wash her hands off). Grieco also contends that the prosecutors improperly submitted other evidence that Godsey had gathered "AFTER the original evidence tampering," which raised "a huge question of the validity" of the evidence submitted to the grand jury and the court, and that the prosecutors "did not correct these falsities."

{¶ 35} The State responds in part that, contrary to Grieco's claims, "the allegedly false police report" was not attached to her petition.

{¶ 36} This Court has noted:

"To prevail on a petition for post-conviction relief, the defendant must establish a violation of his constitutional rights which renders the judgment of conviction void or voidable." *State v. Simons,* 2d Dist. Champaign No. 2013 CA 5, 2013-Ohio-3654, ¶ 11. * * * A trial court may deny a petition without a hearing "where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun,* 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), paragraph two of the syllabus. We review a trial court's denial of post-conviction relief for an abuse of discretion. *Simons* at ¶ 13. * * *

*State v. Cox*, 2d Dist. Montgomery No. 26136, 2015-Ohio-894, ¶ 8.

{¶ 37} This Court has also noted:

An abuse of discretion is "an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). We have often said that "most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* Furthermore, decisions are unreasonable if they are unsupported by a sound reasoning process. "It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

*State v. Gregory*, 2d Dist. Montgomery No. 28695, 2020-Ohio-5207, ¶ 27.

{¶ 38} As this Court has further noted:

R.C. 2953.21 imposes on a petitioner the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate substantive grounds for relief that merit a hearing. *State v. Jackson* (1980), 64 Ohio St.2d 107, 111, 413 N.E.2d 819; *State v. Kapper* (1983), 5 Ohio St.3d 36, 38, 448 N.E.2d 823; *State v. Pankey* (1981), 68 Ohio St.2d 58, 59, 428 N.E.2d 413. A hearing is not required absent a showing that substantive grounds for relief exist. *State v. Moreland* (Jan. 7, 2000), Montgomery App. No. 17557. Broad conclusory allegations are insufficient, as a matter of law, to require a hearing. *Id.* A petitioner is not

entitled to a hearing if his claim for relief is belied by the record and is unsupported by any operative facts other than Defendant's own self-serving affidavit or statements in his petition, which are legally insufficient to rebut the record on review. *Kapper, supra; State v. Vanderpool* (Feb. 12, 1999), Montgomery App. No. 17318.

*State v. Snyder*, 2d Dist. Clark No. 2003-CA-67, 2004-Ohio-4265, ¶ 10.

**{¶ 39}** Further:

"The most significant restriction on Ohio's statutory procedure for post-conviction relief is that the doctrine of res judicata requires that the claim presented in support of the petition represent error supported by evidence outside the record generated by the direct criminal proceedings." *State v. Monroe,* Franklin App. No. 04AP-658, 2005-Ohio-5242. "Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *State v. Perry* (1967), 10 Ohio St.2d 175, 180, 226 N.E.2d 104. "Our statutes do not contemplate relitigation of those claims in post conviction proceedings where there are no allegations to show that they could not have been fully adjudicated by the judgment of conviction and an appeal therefrom." *Id.* "To overcome the res judicata bar, the petitioner must produce new evidence that renders the judgment void or voidable, and

show that he could not have appealed the claim based upon information contained in the original record." *State v. Aldridge* (1997), * * * 120 Ohio App.3d 122, 151, 697 N.E.2d 228. "'Res judicata also implicitly bars a petitioner from 'repackaging' evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal." *Monroe.*

*State v. Goldwire*, 2d Dist. Montgomery No. 20838, 2005-Ohio-5784, ¶ 11.

**{¶ 40}** This Court has further noted:

The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from being convicted when the State either fails to preserve materially exculpatory evidence or destroys, in bad faith, potentially useful evidence. *E.g., State v. White,* 2015-Ohio-3512, 37 N.E.3d 1271, ¶ 58 (2d Dist.). Evidence is "materially exculpatory" if it (1) possesses "an exculpatory value that was apparent before the evidence was destroyed" and (2) is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 74.

"In contrast, evidence is not materially exculpatory if it is merely potentially useful. Potentially useful evidence indicates that the evidence may or may not have incriminated the defendant. The failure to preserve evidence that by its nature or subject is merely potentially useful violates a

defendant's due process rights only if the police or prosecution acted in bad faith." *State v. Cox*, 2d Dist. Montgomery No. 25477, 2013-Ohio-4941, ¶ 88. "The term 'bad faith' generally implies something more than bad judgment or negligence. 'It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.' " (Citations omitted.) *Powell* at ¶ 81.

*State v. McClain*, 2016-Ohio-838, 60 N.E.3d 783, ¶ 21-22.

{¶ 41} While Grieco insists that Godsey's report and the scene log were attached to her petition, the record demonstrates that neither document was attached thereto; however, as noted above, the documents were attached to Grieco's motion for expert assistance, which was filed at the same time as Grieco's petition. But even if we consider the improperly submitted documents, Grieco's assigned errors fail.

{¶ 42} The scene log reflects that Godsey arrived on the scene at "1830" and cleared the scene at "2343"; a medic arrived on scene at "1831" and cleared the scene at "1845." Handwritten on the scene log is the following statement: "He was on scene 'collecting' evidence for hours. He lied in his report, when he said a Harrison Medic gave me saline and a towel. He in fact washed my hands off and got rid of the towel. That towel could have cleared me of my charges, as they claimed I pulled the trigger, which I didn't. DNA proved that fact." In a separate section, the following is handwritten: "The Medics left the scene before Dep. Godsey washed my hands off (Destroying evidence that could have cleared me) at 7:04 or so! Transcript from his body mic goes from 7:03 - 7:11. This transcript shows he Tampered with evidence."

{¶ 43} Godsey's report stated that "Harrison Medics gave [Grieco] a towel and

some saline solution to wash her hands off with."   In State's Exhibit 1, the transcript of Godsey's exchange with Grieco at the scene, as quoted in the trial court's decision on Grieco's motion to suppress, Godsey stated: "I've got some saline and a towel for you, if you want . . . (unintelligible)," and "Let me get you some ah . . . some saline.   You can lean out here and get your hands washed off."

{¶ 44} To the extent that Grieco asserts that the transcript established that Godsey tampered with evidence by washing her hands and failing to preserve the towel, Grieco could have raised this argument at trial or on direct appeal, and the argument is barred by res judicata.

{¶ 45} In Grieco's direct appeal, we noted that, when deputies arrived on the scene of the shooting, they observed Underwood lying on the floor on his back, and Grieco "kneeling next to [him] with her hands on top of a towel on top of his chest."   *Grieco*, 2d Dist. Montgomery No. 28542, 2020-Ohio-6956, ¶ 2.   Godsey testified at the suppression hearing that Grieco and Underwood were the only ones present at the scene when he arrived.   Even if the scene log and report had been properly-submitted new evidence, they did not establish substantive grounds for relief that would have entitled Grieco to a hearing.   Grieco failed to set forth operative facts showing that any evidence that Godsey destroyed or failed to preserve was materially exculpatory evidence, or that Godsey acted in bad faith.   Grieco's petition provided no evidence that Godsey acted with a dishonest purpose, conscious wrongdoing, or ill will.   As the trial court noted, the blood on Grieco's hands and on the towel used to clean them, "which presumably would have been Mr. Underwood's blood, would not have been materially exculpatory."

{¶ 46} As to Grieco's sixth assignment of error, we first note that she fails to identify

"all of the other evidence that Deputy Godsey had gathered AFTER the original evidence tampering" of which she complains. As the trial court noted regarding her assertion that the State withheld exculpatory evidence of Godsey's evidence tampering (namely the transcript of Godsey's and Grieco's exchange), we conclude that Grieco's assertion is both belied by the record and barred by res judicata, because she was aware of the transcript from at least the time of the court's decision on her motion to suppress. Finally, we note that the Supreme Court of Ohio has held that the "suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *See, e.g., State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898, 901 (1988), citing *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In our view, the transcript of the exchange between Godsey and Grieco at the scene was not material to Grieco's guilt.[7]

{¶ 47} Since none of the above arguments presented substantive grounds for relief, the court did not abuse its discretion in overruling Grieco's petition without a hearing. The first, fourth, fifth, and sixth assignments of error are overruled.

{¶ 48} We will next address Grieco's second, third, and seventh assignments of error. They are:

---

[7] At the August 15, 2018 hearing on Grieco's motion for new counsel, she indicated to the court that defense counsel had failed to "file a *Brady* motion" after she requested that he do so. The court advised Grieco that the prosecutors "know under the United States Supreme Court decision *Brady v. Maryland*, they have an independent obligation to disclose anything that would be exculpatory in terms of evidence or punishment. They * * * don't need a motion." In response to a question by the court, the prosecutor acknowledged his obligation under *Brady* and represented that the "State has given full discovery in the case."

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL DURING TRIAL IN VIOLATION OF THE UNITED STATES CONSTITUTION.

THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF APPELLANT IN DETERMINING THAT GROUNDS (2) AND (3) WERE BARRED BY RES JUDICATA.

THE TRIAL COURT USED AN ABUSE OF DISCRETION, IN DISMISSING THE PETITION WITHOUT HAVING AN EVIDENTIARY HEARING ON THE ISSUE OF THE VOLUNTARINESS OF THE GUILTY PLEA.

{¶ 49} These assignments of error relate primarily to defense counsel's alleged ineffective assistance. In her second assignment of error, Grieco asserts that defense counsel "failed to report" the fact that Deputy Godsey and the prosecutors had violated Ohio law. According to Grieco, defense counsel's actions "were well below a reasonable standard," and she was prejudiced by his behavior because she would have gone to trial, but for counsel's "conflicted interests." Grieco also argues that defense counsel and the court violated her rights by trying to cover up misconduct by the police and the prosecution.

{¶ 50} In her third assignment of error, Grieco asserts that the trial court erred in applying res judicata. In her seventh assignment of error, Grieco asserts that her indictment was based upon Godsey's falsified police report, which rendered her plea "involuntary, and obtained through coercion," and "illegal."

{¶ 51} The State responds that Grieco's claims that trial counsel was ineffective in

failing to question Godsey about alleged evidence tampering and failing to report misconduct could have been made on direct appeal and are barred by res judicata. The State further asserts that "Grieco's claims of favorable defense witnesses or the failure to question those witnesses was not supported by any evidence."

{¶ 52} In reply, Grieco asserts that defense counsel's ineffectiveness led to "manifest injustice" and forced her to enter an involuntary plea "without sufficient information and without proper guidance by knowledgeable counsel." She also repeats her arguments that Godsey washed her hands and destroyed exculpatory evidence.

{¶ 53} As this Court has noted:

A plea of guilty is a complete admission of guilt. *E.g., State v. Faulkner*, 2d Dist. Champaign No. 2013-CA-43, 2015-Ohio-2059, ¶ 9. Consequently, a guilty plea waives all appealable errors, including claims of ineffective assistance of counsel, except to the extent that the errors precluded the defendant from knowingly, intelligently, and voluntarily entering his or her guilty plea. *E.g., State v. Frazier*, 2016-Ohio-727, 60 N.E.3d 633, ¶ 81 (2d Dist.). If a defendant pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases." (Citations omitted.) *Frazier* at ¶ 81. Furthermore, "[o]nly if there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty but would have insisted on going to trial will the judgment be reversed." *State v. Huddleson*, 2d Dist. Montgomery No. 20653, 2005-Ohio-4029, ¶ 9, citing *Hill v. Lockhart*, 474 U.S. 52, 52-53, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

(Other citations omitted.)

* * *

A plea may be involuntary if the accused " 'has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.' " *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 42, quoting *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), fn. 13. "Thus, 'a plea does not qualify as intelligent unless a criminal defendant first receives "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." ' " *Id.*, quoting *Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941). "In determining whether a defendant understood the charge, a court should examine the totality of the circumstances." (Citations omitted.) *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 56.

*State v. Riddle*, 2017-Ohio-1199, 88 N.E.3d 475, ¶ 26, 28 (2d Dist.).

{¶ 54} As noted in *Calhoun*, 86 Ohio St.3d 279, 289-290, 714 N.E.2d 905:

We have held that "a petition for post-conviction relief is subject to dismissal without a hearing when the record, including the dialogue conducted between the court and the defendant pursuant to Crim.R. 11, indicates that the petitioner is not entitled to relief and that the petitioner failed to submit evidentiary documents containing sufficient operative facts to demonstrate that the guilty plea was coerced or induced by false

promises." *Kapper,* 5 Ohio St.3d [36,] 38, 5 OBR at 96, 448 N.E.2d at 826. *See also State v. Scott,* 2d Dist. Clark No. 1997-CA-115, 1998 WL 412473, *1 (July 24, 1998) (where the record of a defendant's guilty plea shows compliance with Crim.R. 11 and discounts claimed promises or threats, it provides a sufficient ground for the dismissal of a petition for post-conviction relief which contains only bare allegations, citing *Kapper*).

{¶ 55} The trial court properly concluded that Grieco's arguments about defense counsel's performance and its effect on the voluntariness of her plea were the proper subject of her direct appeal and not her petition for post-conviction relief. We further note that this Court did in fact address the voluntariness of Grieco's plea and counsel's performance in her direct appeal. We determined:

A hearing was conducted on August 15, 2018, during which Grieco expressed concern that counsel was biased against her and thus was not providing adequate representation. Specifically, she claimed that, as the case progressed, counsel "pushed" her to "take a deal," despite her stated desire to "fight" the charges. New Counsel Tr. p. 3. She informed the trial court that she felt counsel had a "predetermined bias[ ]" concerning how the case should be resolved. *Id.* at p. 4. In support of her claim, she faulted counsel for not filing a rebuttal memorandum following a motion to suppress hearing and for his failure to file a motion seeking all exculpatory evidence in the State's possession.

The trial court noted that counsel was appointed on October 2, 2017 and that he obtained the full discovery packet within two days of his appointment. By the end of October, counsel had filed a motion regarding

the grand jury proceedings and a motion seeking a handwriting expert. The court noted that it had held a hearing regarding the grand jury concerns and that counsel conducted a thorough examination of the grand jury witness during that hearing. Counsel also filed motions to suppress and for the appointment of a private investigator. The court further noted that counsel's motion to suppress was thoroughly briefed and that counsel conducted "exhaustive cross-examination of the witnesses" during the hearing. Tr. p. 12. Counsel additionally filed a post-hearing memorandum, which the trial court described as extremely detailed and specific. Finally, the trial court found that, as is the custom in Montgomery County, the State had provided open discovery, which included all exculpatory material.

On this record, Grieco has failed to demonstrate a significant breakdown in the attorney-client relationship. There was no allegation that counsel failed to meet with Grieco to discuss the case or that counsel failed to keep her apprised of the proceedings. Indeed, the record demonstrates, and the trial court found, that *counsel's representation was exemplary*. We cannot conclude that counsel's advice to accept a negotiated plea demonstrated counsel's bias or a lack of effective assistance. We find no basis to disagree with the trial court's assessment of counsel's performance or the status of the attorney-client relationship.

In short, we find no abuse of discretion regarding * * * the trial court's denial of Grieco's motion for the appointment of new counsel, as the record

does not demonstrate that her relationship with counsel had deteriorated to the point that she was denied the effective assistance of counsel.

* * *

Grieco does not challenge the trial court's adherence to the requirements of Crim.R. 11, except to argue the failure to appoint new counsel caused her to feel pressured to accept the plea agreement and thereby "perverted" the purpose of the rule. She argues that "[b]eing forced to proceed with an attorney she believed would not vigorously defend her at trial left [her] with no choice other than to plead guilty."

The record demonstrates that, prior to accepting Grieco's plea, the trial court fully advised her in accordance with the requirements of Crim.R. 11. Grieco affirmatively stated she understood the nature of the charges as well as the possible penalties and the issues regarding merger of the offenses for sentencing. The trial court properly informed her as to the presumption of prison and the findings required to overcome that presumption. The trial court informed Grieco that she would be subject to five years of post-release control and of the penalties for violation thereof, including the effect of committing a new felony. The trial court also appropriately informed Grieco of the constitutional rights she was waiving. The court then ensured that she was entering into the plea voluntarily and of her own free will. *Quite importantly, Grieco affirmatively stated that defense counsel had not pressured her into entering the plea.*

We note that the plea occurred seven days prior to the scheduled

trial date and more than two months after Grieco made the request for new counsel. At no time between the denial of her request and the entry of her plea did Grieco express continued dissatisfaction with counsel's representation. As noted, when entering her plea, Grieco affirmatively stated that she felt no pressure from counsel to accept the plea. Notably, she did not make any claim to the trial court indicating that she felt counsel would not adequately represent her at trial or that, as a result, she believed she had no choice but to enter the plea. Her history with criminal proceedings * * * indicates she is familiar with the criminal justice system, including her rights thereunder and the types of actions defense counsel may take. The trial court conducted an exemplary Crim.R. 11 colloquy and *the record affirms the voluntary and knowing nature of her plea.* Therefore, *we conclude the record simply does not support Grieco's claim that she entered the plea due to pressure from her attorney or because she felt she had no alternative.*

(Emphasis added.) *Grieco,* 2d Dist. Montgomery No. 28542, 2020-Ohio-6956, at ¶ 9-12, 14-16.

{¶ 56} Grieco was not entitled to a hearing on the voluntariness of her plea or counsel's alleged ineffective assistance, and an abuse of discretion is not demonstrated. Accordingly, Grieco's second, third, and seventh assignments of error are overruled.

{¶ 57} Having overruled Grieco's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P. J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Jessica L. Grieco
Hon. Mary E. Montgomery